UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                :

NICOLE IMBEAULT, on behalf of herself, all  :
others similarly situated, and the Proposed New  :
York Rule 23 Class,  :
                                :

          Plaintiff,  :
                                :

        -v.-  :
                                :

RICK'S CABARET INTERNATIONAL INC.,  :
RCI ENTERTAINMENT (NEW YORK) INC.,  :
PEREGRINE ENTERPRISES, INC.,  :
                                :

          Defendants.  :
                                :
-------------------------------------------------------------x



08 Civ. 5458 (GEL)

**OPINION AND ORDER**

Donald H. Nichols, Michele R. Fisher, Paul J.
Lukas, Steven Andrew Smith and E. Michelle
Drake, Nichols Kaster, PLLP, Minneapolis, MN,
for plaintiff.

Jeffrey A. Kimmel and Racquel Crespi Weintraub,
Meister Seelig & Fein LLP, New York, NY,
for defendants.

GERARD E. LYNCH, District Judge:

       Plaintiff Nicole Imbeault brought this action alleging that her former employer,

defendant RCI Entertainment (New York), Inc., and its parent companies, defendants Rick's

Cabaret International, Inc. and Peregrine Enterprises, Inc. ("Peregrine"), failed to pay her earned

and minimum wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et

seq., and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, et seq. and § 650, et seq.

Imbeault sought to prosecute the action not only for herself, but on behalf of all others similarly

situated as a class and collective action. The case never became a class action, however, for

approximately eight months into the litigation, following some discovery, but before Imbeault moved for class certification, Peregrine made, and Imbeault accepted, an Offer of Judgment, pursuant to Federal Rule of Civil Procedure 68, in the amount of $36,000, plus an unspecified amount in "costs, including reasonable attorney's fees, accrued to the date of the offer, in full and final resolution of all claims against all defendants in this action." (Jmt., Doc. #19.)

The parties have been unable to agree on the amount of fees and costs to be paid by Peregrine, and Imbeault now moves for an award of $88,831.25 in attorneys' fees and $4,389.12 in costs. Peregrine challenges both amounts as unreasonable, and argues that its liability should be limited to $15,155.50 in fees and $1307.02 in costs. Having carefully considered the parties' submissions and the Court's familiarity with the litigation, it is determined that a reasonable award falls between the figures advocated by either side. Accordingly, Imbeault's motion will be granted to the extent set forth below.

## DISCUSSION

### I.     Attorneys' Fees

Both the FLSA and the NYLL provide that a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs, to be paid by the defendants. 29 U.S.C. § 216(b); N.Y. Labor Law §§ 198, 663. In determining a "reasonable" fee, the "most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Second Circuit has described the product of these two numbers as the "presumptively reasonable fee," formerly termed the "lodestar." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 183 (2d Cir. 2008) ("Arbor Hill II"). From the presumptively reasonable fee, a court may adjust the ultimate award up or down based upon plaintiff's degree of success. See Hensley, 461

2

U.S. at 434.

Peregrine does not challenge that Imbeault, through the acceptance of its Rule 68 Offer of Judgment, has prevailed and is entitled to a fee award, see Lyte v. Sara Lee Corp., 950 F.2d 101, 103-04 (2d Cir. 1991), and indeed, Peregrine's Offer of Judgment explicitly provides that it will pay Imbeault's "costs, including reasonable attorneys' fees" (Offer of Jmt., Doc. #17). Peregrine does, however, challenge the amount requested as unreasonable, both in the rates charged and the hours expended. Peregrine further argues that the award should be discounted based on Imbeault's limited success. While there is some merit to the former contentions, resulting in piecemeal reductions to the fee award, no broadscale reduction for partial success will be made.

### A.     Reasonable Hourly Rate

"The reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill II, 522 F.3d at 190. This is determined by reference to the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stevenson, 465 U.S. 886, 895 n.11 (1984). Beyond the use of prevailing community rates as a relevant benchmark, courts are also to "bear in mind *all* of the case-specific variables" that go to what the hypothetical reasonable client would pay, with the understanding that the reasonable client "wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill II, 522 F.3d at 190. At the same time, the fee must be "high enough to attract competent counsel." Id. at 193 (internal quotations omitted). "[T]he fee applicant has the burden of showing by 'satisfactory evidence – in addition to the attorney's own affidavits' – that the requested hourly rates are the prevailing market rates." Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005).

3

Imbeault's counsel Nichols Kaster requests hourly rates of $500 and $425 respectively for partners Paul J. Lukas and Steven Andrew Smith, $375 for associate E. Michelle Drake and $175 for its paralegals and law clerks. Peregrine attacks these rates as out of line with prevailing market rates in Minneapolis, Minnesota, where Nichols Kaster is based. But Manhattan, not Minneapolis, is the proper frame of reference. "[D]istrict courts are directed to calculate attorney's fees based on the rates prevalent in the forum in which the litigation was brought." Simmons v. N.Y. City Transit Auth., __ F.3d __, 2009 WL 2357703, at *1 (2d Cir. Aug. 3, 2009); see also In re Agent Orange Prod. Liab. Litig., 818 F.2d 226, 232 (2d Cir. 1987), citing Polk v. N.Y. State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). This so-called "forum rule" is generally applicable regardless of "whether the attorney involved was local or non-local." In re Agent Orange Prod. Liab. Litig., at 232. There is a strong presumption in favor of the forum rule, and departure is appropriate only if a "reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Simmons, 2009 WL 2357703, at *1; Arbor Hill II, 522 F.3d at 184 n.2. Although the rule was designed to curtail excessive fee awards in cases litigated by big city lawyers in small communities, cf. Arbor Hill II, 522 F.3d at 191 (approving out-of-district rate "if it is clear that a reasonable, paying client would have paid those higher rates"), there is no suggestion that the rule is any less applicable in the converse situation presented here.

Despite contending that Minnesota market rates should be utilized, Peregrine offers no reason why a reasonable paying client in Imbeault's shoes would not have retained New York counsel to pursue the action here. In fact, in other sections of its brief, Peregrine repeatedly argues that Imbeault not only could, but should, have retained counsel in New York. (E.g., D. Opp'n 12, 13, 17-18.) If Imbeault could have retained New York counsel at the requested rates,

4

but chose instead to retain Minneapolis lawyers whom she regarded as equally or more qualified to litigate the case, that is some evidence that the rates charged by counsel were reasonable. Accordingly, the reasonable hourly fee will be assessed with reference to the prevailing rates in New York for attorneys of "comparable skill, experience and reputation" as Nichols Kaster. Blum, 465 U.S. at 895 n.11.

At any rate, there is every reason to believe that a reasonable rate for Nichols Kaster's services is far higher than Peregrine suggests, even by Minneapolis standards, for lawyers of similar experience and competence litigating similar matters in a national market. Nichols Kaster, through one of its founding partners, Donald H. Nichols, provides evidence that it is a reputable plaintiff-side employment litigation boutique with a nationwide practice and special expertise prosecuting FLSA cases. (Nichols Aff. ¶¶ 9-14.) It employs twenty-two attorneys with fifty-two support staff and maintains offices in the downtown areas of two major metropolises, Minneapolis and San Francisco. (Id. ¶¶ 6-8.) Thus, there is evidence that Nichols Kaster is not primarily a "Minneapolis" firm litigating local matters in the state and federal courts of Minnesota, but rather has a substantial practice, including handling matters in expensive markets such as New York and San Francisco. To assess the appropriate fees for a national law firm litigating a case in New York according to the rates prevailing in the market for *local* litigation in Minneapolis makes no sense.

In support of Nichols Kaster's requested rates, Imbeault submits the affidavit of Jack A. Raisner, a partner of the well-regarded New York-based employment firm Outten & Golden LLP ("O&G"), who testifies that O&G's current hourly billing rates are $450-900 per hour for partners, $215-325 for associates, $195 for law clerks, and $140-160 for paralegals. (Raisner Aff. ¶ 8.) Raisner further offers the view that all of Nichols Kaster's requested rates – though

5

some falling outside O&G's ranges – are reasonable for this district in light of the attorneys' qualifications.  (Id. ¶ 10.)

Peregrine appears to challenge the comparison to O&G primarily on the basis that O&G, with offices on Manhattan's pricey Park Avenue, is apt to have greater overhead costs than Nichols Kaster.  While this may be true, it is not likely to factor heavily into the hypothetical reasonable client's calculus of what to pay for legal services and accordingly, does not necessarily imply reductions of the requested rates here.  See McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension, 450 F.3d 91, 97 n.6 (2d Cir. 2006) (stating that "[o]verhead is not a valid reason for why certain attorneys should be awarded a higher or lower hourly rate").

The two primary attorneys on the matter, Smith and Drake, attest that their requested rates of $425 and $375 respectively are their usual rates in class actions (Smith Aff. ¶ 3; 3/9/09 Drake Aff. ¶ 3), and there is nothing in the record to undermine that representation.  An attorney's customary rate, however, is but one of many factors to consider.  See Arbor Hill II, 522 F.3d at 187 n.3, 190.  Particularly in a case, such as this, where there is no indication and little likelihood that Imbeault is actually a paying client, the district court "bears the burden of disciplining the market, [by] stepping into the shoes of the reasonable, paying client" "to ensure that the attorney does not recoup fees that the market would not otherwise bear."  Arbor Hill II, 522 F.3d at 184.  A consideration of the totality of circumstances bearing on a reasonable fee lead to the conclusion that the requested rates require reduction.

Smith is a Nichols Kaster partner with over thirteen years' experience and whose practice focuses on employment litigation. (Smith Aff. ¶ 4.)  He is experienced trying cases and arguing appeals, and has authored numerous articles and lectured on employment litigation. (Id. ¶¶ 5, 8.)

6

O&G's Raisner attests that $425 is reasonable for an attorney with similar credentials and experience and the request is beneath the range which O&G bills for partner time. (Raisner Aff. ¶¶ 8, 10). The rate, however, slightly exceeds those that have been awarded in similar cases for "seasoned litigators," which tend to fall within the range of $254-381 (adjusted for inflation). Yea Kim v. 167 Nail Plaza, Inc., No. 05 Civ. 8560, 2009 WL 77876, at *8 (S.D.N.Y. Jan. 12, 2009). While this figure by no means suggests the only acceptable range within which to award a fee, it provides a useful benchmark.

Imbeault cites a number of cases awarding rates of $425 or greater to partners. (P. Reply 3 n.4.) Those cases provide scant support for awarding Smith $425 per hour in this case, however, as all of those cases involved either different or more complex litigation, Lucky Brand Dungarees, Inc. v. Ally Apparel Res., LLC, No. 05 Civ. 6757, 2009 WL 466136, at *6 (S.D.N.Y. Feb. 25, 2009) (trademark litigation); N.Y. City Dist. Council of Carpenters Pension Fund v. Quantum Constr., No. 06 Civ. 13150, 2008 WL 5159777, at *13 (S.D.N.Y. Dec. 9, 2008) (ERISA action); Heng Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007) ("unusually difficult and complex" FLSA action), or involved attorneys with considerably more experience than Smith, Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 545-46 (S.D.N.Y. 2008) (attorneys with over thirty years' experience); Simmonds v. N.Y. City Dep't of Corrs., No. 06 Civ. 5298, 2008 WL 4303474, at *1 nn.2-3, *5 (S.D.N.Y. Sept. 16, 2008) (attorneys with twenty-two and eighteen years of experience). Nevertheless, as recounted above, Nichols Kaster has a substantial national presence and expertise in employment litigation, commensurate with the practice of O&G. Accordingly, in light of these factors and the Court's own knowledge of the rates charged in this district, see McDonald ex rel Prendergast, 450 F.3d at 96-97, a rate of $400 per hour is deemed reasonable for Smith's work.

Drake is an associate at Nichols Kaster with nearly eight years' of legal experience. (3/9/09 Drake Aff. ¶ 5.)  The early years of her legal career were spent in other areas of the law, but since joining Nichols Kaster in 2007 she has worked almost exclusively on employment cases.  (Id. ¶ 5.)  Although Raisner attests that the requested $375 per hour is reasonable for Drake's work, it is both above the going rate for O&G associates (Raisner Aff. ¶¶ 8, 10), and above rates recently awarded to attorneys of comparable experience and expertise.  E.g., Torres v. City of New York, No. 07 Civ. 3473, 2008 WL 419306, at *1 (S.D.N.Y. Feb. 14, 2008) (awarding, in civil rights litigation, $350 per hour for attorney with ten years' experience); Heng Chan, 2007 WL 1373118, at *4 (awarding, in complex FLSA action, $300 per hour for attorney with six years' experience in complex FLSA action).  In light of these factors, Drake's time will be compensated at $325 per hour.

In addition to fees for Smith and Drake, Imbeault also seeks fees for the work of Nichols Kaster partner Paul Lukas at $500 per hour, and several paralegals and law clerks at $175 per hour.  Imbeault has failed, however, to supply any information concerning these individuals' experience or credentials, and accordingly, the requests will be reduced on that basis alone.  See Suchodolski Assocs., Inc. v. Cardell Fin. Corp., Nos. 03 Civ. 4148, 04 Civ. 5732, 2008 WL 5539688, at *2 (S.D.N.Y. Dec. 18, 2002) ("Where the moving party fails to provide information on the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested.").  As to Lukas, the fact that Nichols Kaster requests a rate greater than that requested for Smith indicates that Lukas likely has at least as much experience as Smith and – in the absence of any other evidence of Lukas's qualifications – suggests a reasonable rate commensurate with that awarded for Smith.  Accordingly, Lukas's time will be awarded at $400 per hour.

8

Similarly as to the paralegals and law clerks, Imbeault's failure to provide any evidence of the individuals' skills, qualifications or relevant experience compels reduction of the requested rates. Peregrine suggests that absence of this information makes an award of $50 per hour appropriate. While the absence of supporting credentials supporting makes "compensation near the lower end of the market range" appropriate, Peregrine's requested rate of "$50 per hour, however, is substantially below even the bottom of the market range" for paralegals. Torres, 2008 WL 419306, at *2 (internal quotations omitted). Rather, the paralegals' and law clerks' time will be awarded at $80 per hour, in accord with the rates accepted for the similarly undocumented paralegals in Torres. Id.

In sum, the following rates will apply: $400 for Lukas and Smith, $325 for Drake, and $80 for paralegals and law clerks.

B.    Reasonable Hours Expended

The second component of the presumptively reasonable fee is the number of hours reasonably expended on the matter, which is defined as the hours actually expended less any "excessive, redundant, or otherwise unnecessary" time. Hensley, 461 U.S. at 434. As required, Nichols Kaster has submitted contemporaneous time records that "specify, for each [timekeeper], the date, the hours expended, and the nature of the work done." Vargas v. Transeau, No. 04 Civ. 9772, 2008 WL 3164586, at *3 (S.D.N.Y. Aug. 6, 2008), quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). A review of the hours documented indicate that, by and large, Nichols Kaster's expenditure of time was reasonable. Peregrine nevertheless challenges the compensability of the majority of tasks undertaken as either wholly or partially unnecessary. A number of these objections are readily rejected.

9

Relying on Hnot v. Willis Group Holdings Ltd., No. 01 Civ. 6558, 2008 WL 1166309 (S.D.N.Y. Apr. 7, 2008), which opined that where an attorney's "sole or primary role in the litigation [was] to review the work product of others, such time would perhaps not . . . be[] compensable without a showing of a particularized benefit," id., at *7, quoting In re AMF Bowling Sec. Litig., 334 F. Supp. 2d 462, 468 (S.D.N.Y. 2004), Peregrine seeks to exclude all time spent by Lukas because his primary role in the litigation was to review and revise Drake's work. Neither Hnot nor AMF Bowling, however, suggest that a supervisory partner's time should be excluded, as both cases involved time spent by one law firm reviewing the work of another. It is entirely customary for senior partners to supervise and review the work product of more junior attorneys, and indeed, such delegation is often considered a measure of sound billing judgment, by permitting less experienced – and less costly – lawyers to perform, under supervision, work that could not responsibly be assigned to such lawyers working without supervision. That Lukas was not otherwise heavily involved in the matter does not render the work he did do excessive or unnecessary. There is thus no basis to exclude the relatively small amount of time Lukas spent on this matter (a total of 5.2 hours) from the fee award.

Next, without stating the basis for its belief, Peregrine conclusorily asserts that Nichols Kaster "billed an excessive number of hours for internal conferences and memos" and suggests an across the board thirty-five percent reduction for these tasks. (D. Opp'n 14.) Peregrine's objection appears to be founded on Nichols Kaster's failure to identify the precise subject matter of these meetings and memos. Although reductions for vague time entries may sometimes be warranted, see Hnot, 2008 WL 1166309, at *5, Peregrine does not even bother to identify which entries it contests or calculate the hours involved in the challenged entries, and thus its bald assertion that the time spent is "excessive" rings empty.

10

Peregrine also seeks to exclude from the award all time spent researching and preparing a motion for class- and collective-action certification since the motion was ultimately never filed. This argument in unavailing. In determining whether hours are to be excluded as unnecessary, the inquiry "is not whether hindsight vindicates an attorney's time expenditures," Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992), but rather, as Peregrine itself recognizes, "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." (D. Opp'n 8 (internal quotations omitted), quoting Yea Kim, 2009 WL 77876, at *4.) Thus, the mere fact that the motion was not filed is not dispositive. Rather, work performed in furtherance of claims ultimately withdrawn or not pursued – if reasonably undertaken at the time – "is not compensable only if it is 'wholly unrelated' in fact or law to" successful claims. Hnot, 2008 WL 1166309, at *4, quoting Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994); see also Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) ("Attorney's fees may be awarded for unsuccessful claims as well as successful ones . . . where they are inextricably intertwined and involve a common core of facts or are based on related legal theories." (internal quotations omitted)).

Here, Imbeault did not simply abandon the class claims, nor was class certification denied. Rather, those claims were ultimately not pressed because Peregrine bought out Imbeault before the action progressed to the certification stage. In fact, it is quite reasonable to think that the possibility that Imbeault's individual claim could have turned into a broader class and/or collective action – with defendants exposed to greatly increased liability – played a role in Peregrine's decision to offer judgment to Imbeault when it did. The framing of the action as a potential class action thus was in Imbeault's own interest, and any reasonably diligent FLSA attorney would have researched and considered whether class and/or collective claims could be

11

brought, and if it believed they could, would have pursued the matter.  Nichols Kaster thus acted entirely reasonably in preparing as if the case would progress to the certification stage in the ordinary course and in pursuing the broader claims before any settlement offer was on the table.

Moreover, Imbeault's individual claims and the claims of the putative class and collective actions undoubtedly shared a common core of facts and were based on a related legal theory.  Accordingly, because the reasonably-pursued class- and collective- action claims were substantially related to the claims on which Imbeault prevailed, the time spent in pursuit of certification will be included in the fee award.  See Barfield v. N.Y. City Health & Hosps. Corp., No. 05 Civ. 6319, 2006 WL 2356152, at *2 (S.D.N.Y. Aug. 11, 2006) (declining to eliminate from fee award to FLSA plaintiff the time spent in connection with failed motion for collective action certification since the unsuccessful certification motion and ultimately successful summary judgment motion shared a "common core of facts" and "related legal theory"), aff'd on other grounds, 537 F.3d 132 (2d Cir. 2008) ("Barfield II").

Similarly rejected is Peregrine's contention that the two hours Drake spent preparing supplemental discovery demands that were never served should be excluded.  Here too, it appears that the only reason these discovery requests – which were drafted the same day Peregrine offered judgment (Smith Aff. Ex. C at 14) – were not ultimately served is because of the settlement offer.  There is thus no basis to conclude that the time spent in this regard was excessive or unnecessary.

Peregrine also challenges the time spent on the discovery demands that were served. Nichols Kaster spent a total of 8.9 hours preparing its first set of document requests and interrogatories – 6.5 hours by Drake and the remaining 2.4 by paralegals.  Peregrine contends that this time is excessive, pointing out that Nichols Kaster is pursuing a similar litigation in

12

Minnesota against companies related to the defendants in this action, and that many of the discovery demands served this case mirror requests previously made in the Minnesota action. Peregrine thus suggests that the time spent preparing the requests in this action be reduced by the percentage of the discovery demands served here that were also used in the Minnesota case, which by its count amounts to a 78.5% reduction.

Peregrine's suggestion fundamentally flawed. The fact that there is a similar litigation pending does not automatically result in a pro rata cut based on the percentage of overlap, nor does it imply that Nicholas Kaster double-counted its time, as Peregrine appears to assume. Nichols Kaster represents that the bills submitted accurately reflect the hours actually expended in this matter, and are lower than they otherwise would have been precisely because it was able to start from previously created work product. (P. Reply 6.)

Still, overlap or no, the fee award must be limited to hours reasonably expended on the tasks, and on first glance, 6.5 hours for an experienced attorney to draft largely standard discovery requests when already starting with a substantial head start seems potentially excessive. Nichols Kaster, however, points out that it was required to spend time researching case law and reviewing documents, including defendants' SEC filings as well as documents provided by both Imbeault and defense counsel, presumably to determine which of the previously-prepared discovery requests were appropriate for this case, and to ensure that its requests swept as broadly as warranted, in the end, drafting nearly eight pages of new requests for Imbeault. Peregrine offers no evidence to suggest otherwise and in light of these considerations it cannot be said that the 6.5 hours of attorney time is unreasonable. Nor is there a basis to think that the few hours of paralegal time formatting and finalizing the documents is excessive. The time spent by Nichols Kaster in preparing these discovery demands will

13

therefore be counted in its entirety.

More meritorious is Peregrine's argument concerning the joint letter submitted to the Court concerning the parties' dispute about the scope of discovery. As Peregrine points out, Imbeault went beyond arguing the narrow dispute to be decided by this Court, and included substantial extraneous accusations about defendants' conduct during discovery. (Kimmel Aff. Ex. D.) Peregrine should not have to pay for these unnecessary components of the letter. Since the amount of time spent briefing the irrelevant issues versus the core discovery dispute cannot be determined with precision, the most sensible mechanism to segregate the compensable from the unnecessary is to reduce the allowable hours by the proportion of Imbeault's section of the letter dedicated to superfluous matters. Peregrine argues that this amounts to 6.5 of Imbeault's 13.5 pages. (D. Opp'n 11.)[1] The Court agrees with Peregrine's assessment in this regard – which Imbeault does not refute – and accordingly, only 52% of the time Nichols Kaster spent on this letter will be compensated. This equates to a reduction of 7.2 Drake's hours, and 1.1 of Smith's.

Peregrine's remaining objections also warrant reductions of the awardable hours. First, Peregrine objects to the number of hours spent drafting deposition notices. Nichols Kaster initially prepared and served 20 deposition notices, and spent a total of 5.1 hours in so doing, split into 0.8 hours each by Smith and Drake, and 3.5 hours collectively by paralegals. After defendants' counsel advised Nichols Kaster that the notices violated Federal Rule of Civil

---

[1] Peregrine further argues that the two pages of the letter containing legal argument copied from a brief in another action and reproducing the text of a document request and the response thereto and should be included in calculating the percentage to be excluded from the fee award. This argument suffers from a similar double-counting fallacy that infected Peregrine's argument with respect to the discovery demands and is likewise rejected here.

Procedure 30(a)(2)(A) – which allows a maximum of 10 depositions per side, absent agreement of the parties or leave of the court – Nichols Kaster spent an additional 1.4 hours preparing amended deposition notices to comport with the rule. Preparing new deposition notices necessarily duplicated work that could – and should – have been done properly in the first instance. In this situation, Peregrine's suggestion that the 5.1 hours spent preparing the initial erroneous notices should be excluded from the fee award is well-taken and the reduction will be made.

Next, Peregrine's argues that it should not be required to pay for the 1.5 hours Smith spent "strateg[izing] and review[ing] cases for defendants' anticipated Rule 12 motion." (Smith Aff. Ex. D at 5.)[2]  Although hindsight is not the test in assessing the reasonableness of time expenditures, Grant, 973 F.2d at 99, and although a subsequent filing of a motion to dismiss may have well rendered this preemptive research compensable, defendants in fact did not move to dismiss, and a reasonable paying client would not be expected to pay for this unnecessary effort. Nor will Peregrine.

Finally, Peregrine objects to paying for the time Smith and Drake spent traveling between Minnesota and New York for court conferences and client meetings, and the three hours spent by Nichols Kaster paralegals preparing motions for Drake's and Smith's admission to this Court pro hac vice on the grounds that Imbeault could have obviated these expenses by retaining qualified counsel in New York. The corollary of the forum rule's strong presumption in favor of

---

[2]  Smith's time sheets reflect 2.5 hours spent on September 11, 2008, performing four tasks, only one of which relates to this anticipated motion. Although in some circumstances disallowing the entirety of a block-billed entry that commingles compensable with non-compensable tasks may be appropriate, see infra n.3, here, Peregrine only seeks a 1.5 hour reduction for this work (D. O'ppn 12 n.10), and the result is sensible.

setting a reasonable hourly fee with reference to "rates prevalent in the forum in which the litigation was brought" is that Imbeault should not be rewarded for the decision to retain out-of-state counsel unless she "persuasively establish[es] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Simmons, 2009 WL 2357703, at *1. There is no suggestion that qualified counsel in New York was unavailable or unlikely to have achieved similar success. Therefore, although the time spent traveling and in preparing pro hac vice motions became reasonably necessary to the litigation once Imbeault chose Minneapolis counsel, the time spent on these tasks must be excluded, because the hypothetical reasonable client who wishes to spend the least amount necessary to litigate the matter, "with [her] own pocketbook in mind, instead of [her] opponents,'" would have retained local counsel. Id. at *5. This amounts to a reduction of 23 hours of Smith's time, 22 of Drake's and 3 of the paralegals'.[3]

After the various reductions recounted above, a total of 194.25 hours are compensable: 5.2 for Lukas, 52.2 for Smith, 82.45 for Drake, and 54.4 for the law clerks and paralegals collectively. At the hourly rates for each established above, the presumptively reasonable fee thus comes out to $54,108.25.

---

[3] The travel time reductions for Smith and Drake are arrived at as follows: Nichols Kaster's time sheets reflect 6 hours of Smith's time and 16.5 hours of Drake's unambiguously attributable to travel. (Smith Aff. Ex. C at 5, 11.) Several other entries, totaling 17 hours for Smith and 5.5 hours for Drake, combine travel time with other theoretically fully compensable activities. (Id. at 1, 5.) Although block-billing of this sort is "not automatically disfavored," "reductions for block-billing" may be appropriate in cases where the block-billing "mix[es] together tasks that [are] not all compensable, or not all compensable at the same rate." Hnot, 2008 WL 1166309, at *6; see also Williams v. N.Y. City Hous. Auth., 975 F. Supp. 317, 328 (S.D.N.Y. 1997) (reducing compensation for entries that include travel, after determining that travel time should be compensated at 50%). Here, because it is impossible to segregate the time spent on compensable tasks from the travel time, the entirety of these block-billed entries encompassing travel will be excluded.

C.    Degree of Success

Characterizing Imbeault's success as "limited" because she initially sought to pursue the

matter as a class and collective action, but ultimately settled with respect to her individual claims

only, Peregrine argues that the fee award should be discounted fifty percent from the

presumptively reasonable amount.  Although "[t]he product of reasonable hours times a

reasonable rate does not end the inquiry," and the presumptively reasonable fee may be adjusted

based on "other considerations . . . . including, the important factor of the results obtained,"

Hensley, 461 U.S. at 434 (internal quotations omitted), such a reduction is not warranted here

because, for the present purposes, Imbeault was fully successful.

The Supreme Court has repeatedly instructed that "'[t]he most critical factor' in

determining the reasonableness of a fee award 'is the degree of success obtained.'" Farrar v.

Hobby, 506 U.S. 103, 114 (1992), quoting Hensley, 461 U.S. at 436; accord, Barfield II, 537

F.3d at 152.  Accordingly, where the plaintiff has achieved only "partial or limited success, the

product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate

may be an excessive amount."  Hensley, 461 U.S. at 436.  Conversely, "[w]here a plaintiff has

obtained excellent results, his attorney should recover a fully compensatory fee," even if the

plaintiff did not "prevail on every contention raised in the lawsuit."  Id. at 435.

Peregrine points to the Second Circuit's opinion in Barfield II, which upheld a fifty

percent fee award reduction on the basis of the FLSA plaintiff's limited success where the

plaintiff – much like Imbeault – sought to pursue a collective action but ultimately prevailed

solely on her individual claim.  537 F.3d at 152-53.  In that case, however, despite the

"plaintiff's primary aim . . . , as reflected in her complaint and in the first four months of

litigation[,] . . . to certify a collective action," certification was denied upon the district court's

17

finding that she "could not make even the modest factual showing required to support a FLSA action." Id. at 152 (internal quotations omitted). On those facts, the Second Circuit agreed with the district court that awarding a full attorneys' fee would simultaneously have the undesirable effect of "decreasing the incentive for plaintiffs' lawyers vigorously to litigate collective action certification, and . . . encouraging plaintiffs' lawyers to file collective action-based claims even where there is little basis for doing so." Id. (internal quotations omitted). The denial of the plaintiff's certification motion thus warranted the reduction. See id. at 153.

Here, by contrast, Imbeault did not fail to make the "modest factual showing" necessary to certify a collective action. Instead, the parties settled before reaching that phase of the litigation and before Imbeault was provided much in the way of class-related discovery. Indeed, Peregrine's Offer of Judgment was made before defendants were to provide a list of certain other employees potentially similarly situated to Imbeault and documents pertaining to its policies vis-à-vis those employees' job duties and requirements, before Imbeault conducted any depositions, and over a month-and-a-half before the deadline move for certification. (4/7/09 Drake Aff. ¶¶ 3-5.) Had the case continued, Imbeault may well have been able to obtain certification. Peregrine chose instead to make Imbeault a substantial offer, in part, perhaps, to avoid that result. Thus, while awarding full fees in Barfield would have encouraged the pursuit of similarly frivolous class and/or collective actions, the risk presented here is precisely the opposite: allowing defendants to reduce their liability for attorneys' fees by picking off named plaintiffs before a certification motion can be considered would unduly discourage plaintiffs' lawyers from devoting the time necessary to vigorously litigate even meritorious collective action cases pre-certification.

18

Peregrine has not suggested that the result obtained by Nichols Kaster for Imbeault was anything less than fully successful in any meaningful way.[4]  Imbeault did not fail to secure certification; rather, she obtained a complete, albeit early, victory for herself, notwithstanding the fact that she initially may have envisioned a broader litigation.  Beyond perhaps inducing her early victory, however, it is not clear what additional benefits Imbeault may have obtained from wider class relief.  For these purposes then, she was fully successful and accordingly no reduction for limited success is warranted.  Cf. Rozell, 576 F. Supp. 2d at 542 (finding a limited success reduction unwarranted "although certain claims fell by the wayside during the course of the litigation" because those "claims would not have entitled the plaintiff to any additional remedies").

## II.    Costs

In addition to providing for an award of a reasonable attorneys' fee to a prevailing plaintiff, the FLSA also provides for defendants payment of the costs of the action.  29 U.S.C. § 216(b); accord, N.Y. Labor Law § 663.  This includes "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998), quoting U.S. Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d Cir. 1989).  Imbeault seeks $4,389.12 in costs, which are comprised primarily of the ordinary and usual costs attendant to litigation, including expenses such as court filing fees, process server fees, postage, photocopying, legal research, and travel.  (Smith Aff. Ex. D.)

---

[4]  In addition to taxing Imbeault for lack of certification, Peregrine points out that its offer was expressly without any admission of defendants' liability.  Under the circumstances, this is no basis to make a limited success reduction and Peregrine does not even seriously argue the point.  To do so would lead to the perverse result of a substantial fee award reduction in the majority of settlements.

Peregrine begins by objecting generally to the payment of *any* costs on the grounds that Nichols Kaster has neither provided any evidence that it regularly charges its clients for these types of costs nor provided actual invoices of the expenses, but quickly abandons that contention, in the end arguing that the cost award should be reduced to $1,307.02 by excluding from the requested amount Westlaw charges, costs associated with the pro hac vice motions, and travel expenses.

The $350.00 in Westlaw charges will be allowed. A party seeking an award of costs and fees pursuant to fee-shifting provisions – such as the FLSA and NYLL – should be permitted to recover expenses associated with computerized research "because such services presumably save money by making legal research more efficient, and because paying clients reimburse[] lawyers' LEXIS and WESTLAW expenses, just as [they] reimburse their paralegal expenses." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004) (alterations in original; quotations omitted) ("Arbor Hill I"). Nevertheless, Peregrine challenges the charges on the ground that Nichols Kaster has not produced evidence that it typically bills its clients for Westlaw charges rather than absorbing the costs into its overhead. This position finds some support in the caselaw, e.g., Lucky Brand Dungarees, 2009 WL 466136, at *7, stemming from Arbor Hill I's statement that "[i]f [plaintiff's counsel] normally bills its paying clients for the cost of online research, that expense should be included in the fee award," 369 F.3d at 98.

But regardless of Nichols Kaster's specific practices, it is commonplace to pass computer research fees on to clients, making such expenses part of "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients" that comprise an appropriate cost award. LeBlanc-Sternberg, 143 F.3d at 763 (including computerized legal research in category of expenses generally "not properly treated as overhead expenses for

20

purposes of a fee award" but rather "the sort of expenses that may ordinarily be recovered"). While in certain circumstances Peregrine's argument may have merit, it is easy to see that it would make little sense in the context of a pro bono legal services organization that does not bill clients at all, but it is nevertheless entitled to recoup costs. It is similarly specious in the context of a firm such as Nichols Kaster, focused on plaintiff-side employment litigation, a practice in which clients typically do not pay the full cost of legal services, and "overhead" costs often encompass any unsuccessful litigation. Additionally, in accord with Arbor Hill's rationale for finding online research fees generally recoverable, "common sense dictates that if [Nichols Kaster] had performed their research using books, the increase in their fees would have grossly overshadowed the relatively modest amount they spent on Westlaw," Wise v. Kelly, 620 F. Supp. 2d 435, 456 (S.D.N.Y. 2008), as the entirety of the Westlaw charges amount to just over one hour's worth of Drake's time (at the reduced rate being awarded). Accordingly, the $350 in Westlaw charges will be included in the award.

Costs associated with Smith's and Drake's travel to New York and their pro hac vice motions, however, will be denied. For the same reasons that Imbeault cannot recover for the time Nichols Kaster spent in preparing pro hac vice motions and for Smith's and Drake's travel, she cannot recover for the expenses related to these endeavors.

Nichols Kaster documents $793.23 spent on travel. (Smith Aff. Ex. D.) Peregrine also lumps into the travel calculations an additional $1555.87 encompassing a $457.39 expense incurred on April 26, 2008, described only as a "Check issued to American Express – Steven A. Smith Monthly Billing," and a $1,098.48 expense incurred on September 10, 2008, with the similarly cursory description of "Check issued to American Express." (Smith Aff. Ex. D.) Although it is not apparent from the face of Imbeault's submissions what exactly these expenses

21

cover, from their timing each appears at least potentially related to travel, both occurring within

several weeks of counsel's trips to New York, as documented in their time sheets.  (Smith Aff.

Exs. C at 1, 5 & D.)  Moreover, with respect to the second, more substantial expense, Smith

apparently provided some breakdown to defense counsel, representing that the charges were

comprised of various travel-related expenses.  In determining the compensability of these

expenses, Smith's unsworn representations relayed to the Court second-hand through defense

counsel are insufficient.  Imbeault's failure to properly itemize and document these expenses

results in their exclusion regardless of whether they are travel related or not.

Finally, with respect to the costs associated with the pro hac vice motions, Peregrine

asserts at one point that they total $313 (D Opp'n 13) and at another point $383 (id. 17).  It is not

entirely clear how it reached either of these figures, though they appear to include some costs

related to process servers, as the costs clearly attributable to the motions are limited to $178.

Inclusion of process server fees would make sense if Nichols Kaster had in fact used such to

serve these motions.  Its filings do not suggest that they did, however, instead, indicating service

of both motions by facsimile and U.S. Mail.  (Docs. # 8, 16.)  Accordingly, the pro hac vice

related cost reductions will be limited to $178 and together with the travel and/or improper

documentation reductions, the various reductions from the requested costs equal $2527.10, for a

total cost award of $1862.02.

## CONCLUSION

For the foregoing reasons, Imbeault's motion (Doc. #20) for an award of attorneys' fees

is granted in part and denied is part.  Imbeault is awarded $54,108.25 in attorneys' fees and

$1862.02 in costs, for a total award of $55,970.27.

SO ORDERED.

Dated: New York, New York
      August 13, 2009

GERARD E. LYNCH
United States District Judge